UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| In Re Subpoena for Documents, | ) | 2:18-mc-00062 RSL |
| | ) | |
| eNOM, INC., | ) | MOTION TO QUASH |
| | ) | SUBPOENA FOR DOCUMENTS |
| Subpoenaed Party, | ) | |
| | ) | Note for: 29 June 2018 |
| Unnamed Domain Owner, | ) | |
| | ) | (Oral argument requested) |
| Movant. | ) | |
| | ) | |

## STATEMENT OF MOTION

Movant Unnamed Domain Owner moves to quash a non-party subpoena issued out of the U.S. District Court for the Western District of Virginia in civil case No. 3:17-cv-00072-NKM (filed Oct. 11, 2017), captioned *Sines, et al v. Kessler, et al.* The subpoena was issued at the request of one of the defendants in that case, Michael Peinovich.  (Exhibit A "Subpoena").  The first amended complaint in this underlying case is attached as Exhibit B (the "Complaint") to this motion.

## BACKGROUND

The case in *Sines, et al v. Kessler, et al* arises out of the violent white nationalist "Unite the Right" gathering that took place in Charlottesville, Virginia on August 11 and 12, 2017.  Plaintiffs in the litigation are individuals seriously injured

RALPH HURVITZ
ATTORNEY
P.O. BOX 25642
SEATTLE, WA 98165
206.223.1747

by white nationalists during the events of August 11 and 12, including one plaintiff who suffered a stroke as a result of his injuries, and two plaintiffs who were struck by a car in the car attack that killed anti-racist counter-protester Heather Heyer, and seriously injured at least 19 other people.   Defendants in the case are twenty-five individuals and organizations who were the key organizers of and participants in the Unite the Right rally, along with a number of unnamed co-conspirators.   The Complaint alleges that defendants "conspired to plan, promote, and carry out the violent events in Charlottesville" (Ex. B ¶ 3), and seeks money damages and injunctive relief.

The subpoena at issue in this motion to quash was issued by one of the *pro se* Defendants in the case Michael "Enoch" Peinovich.   Defendant Peinovich, who self-identifies as a white nationalist or ethno-nationalist, was one of the most prominent organizers of the Unite the Right event, and was advertised as a speaker for the event. He is the creator of the popular neo-Nazi blog and website The Right Stuff, is a co-host of the white nationalist Daily Shoah podcast, and is a frequent speaker at white nationalist and neo-Nazi events around the country.   (Ex. B ¶ 42).

At Defendant Peinovich's request, the clerk's office in the Western District of Virginia issued the subpoena challenged here.   The subpoena was issued to eNom, Inc., a domain name registrar and Web hosting company headquartered in Kirkland, Washington (eNom).   The subpoena seeks "[c]ommunications, documents, and

MOTION TO QUASH SUBPOENA-2

RALPH HURVITZ
ATTORNEY
P.O. BOX 25642
SEATTLE, WA 98165
206.223.1747

[electronically stored information] sufficient to identify the persons, including

entities, that have presently registered or ever in the past registered" two website

domains.

Movant in the instant matter is the owner of one of the domains targeted by

the subpoena. (eNom has informed Defendant Peinovich that the second domain is

not actually registered with eNom, but is registered through a different company.

(Exhibit C "Declaration of Counsel"). Pursuant to its subpoena policy, eNom has

provided Movant with notice of the subpoena in order to give Movant sufficient time

to challenge its validity.  eNom has represented to Movant that it will not comply

with the subpoena pending the outcome of this motion to quash.  (Exhibit C

Declaration of Counsel).

ARGUMENT

A.      MOVANT HAS STANDING TO BRING THIS MOTION TO QUASH

An individual has personal right in information in his or her profile and inbox

on social networking site and his or her webmail inbox in same way that individual

has personal right in employment and bank records; as with bank and employment

records, this personal right is sufficient to confer standing to move to quash subpoena

seeking such information under Fed. R. Civ. P. 45. *Crispin v. Christian Audigier,*

*Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010).

As argued below, the movant has first amendment privilege to anonymous

speech. To the extent that the subpoena ultimately seeks the identities of anonymous

MOTION TO QUASH SUBPOENA-3

RALPH HURVITZ
ATTORNEY
P.O. BOX 25642
SEATTLE, WA 98165
206.223.1747

contributors of the movant's online news service, the movant also has a first

amendment privilege to shield its sources. See, *O'Grady v. Superior Court*, 139 Cal.

App. 4th 1423, 1468 (2006). Also argued below, the Stored Communications Act

prohibits the use of a civil discovery subpoena for the information sought.

B.     THE WESTERN DISTRICT OF WASHINGTON IS THE PROPER
       TRIBUNAL FOR OBJECTION TO THE SUBPOENA.

       The Federal Rules were significantly amended in 2013 to clarify and simplify

Rule 45 subpoenas. The Rules now require all subpoenas to be issued from the

district court where the action is pending. See, Fed. R. Civ. P. 45(a)(2).  However, in

the case of discovery subpoenas to non-parties, the primary forum for resolving

motions to quash or modify is the district court for the "district where compliance is

required" Fed. R. Civ. P. 45(d)(2)(B)(i).  That court has primary responsibility for

modifying, quashing, or enforcing subpoenas directed to persons within its

jurisdiction under Rule 45(c), which sets certain geographic limits. See, *Ellis v.

Arrowood Indem. Co.*, 2014 WL 4365273, at 2 (S.D. W. Va. Sept. 2, 2014); Fed. R.

Civ. P. 45(f), advisory committee's note to 2013 amendment ("Subpoenas are

essential to obtain discovery from nonparties. To protect local nonparties, local

resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and

the requirements in Rules 45(d) and (e) that motions be made in the court in which

compliance is required under Rule 45(c).").

       In this case, the subpoenaed entity, eNom Inc., is headquartered and has its

MOTION TO QUASH SUBPOENA-4

RALPH HURVITZ
ATTORNEY
P.O. BOX 25642
SEATTLE, WA 98165
206.223.1747

primary place of business at 5808 Lake Washington Blvd. NE, Suite 201 Kirkland,

WA 98033. (Ex. A Subpoena). Therefore, the proper compliance district is the

United States District Court for the Western District of Washington.

The subpoenaing party designated "PO Box 1069 Hopewell Junction, NY

12533" as the place of compliance. Notwithstanding that ineffective designation, the

real place of compliance is the district in which the subpoenaed party is located.

C.     THE SUBPOENA MUST BE QUASHED BECAUSE IT COMMANDS
       COMPLIANCE MORE THAN 100 MILES FROM WHERE THE
       SUBPOENAED ENTITY RESIDES, IS EMPLOYED, OR REGULARLY
       TRANSACTS BUSINESS.

Rule 45(d)(3)(A) states, "On timely motion, the court for the district where

compliance is required must quash or modify a subpoena that … (ii) requires a

person to comply beyond the geographical limits specified in Rule 45(c). In the case

of subpoenas requesting documents or tangible things, the subpoena may only

command "production" of documents, ESI, or tangible things at a place within 100

miles of where the subpoena recipient resides, is employed or regularly transacts

business in person. See, Fed. R. Civ. P. 45(c)(2)(A).

The court may take judicial notice that a post office box in Hopewell Junction,

New York is more than 100 miles from 5808 Lake Washington Blvd. in Kirkland,

Washington.

This rule is a mandatory, non-waivable defect. It applies regardless of whether

compliance by electronic or U.S. mail is requested. Consequently, the subpoena must

MOTION TO QUASH SUBPOENA-5

be quashed.

D.      THE SUBPOENA MUST BE QUASHED BECAUSE OF DEFECTIVE SERVICE.

The 2013 amendment to Rule 45 clarified that a subpoena may be served at any place within the United States. However, a subpoena may not be served by a party to an action.  Fed Rule Civ. R 45(b)(1).

Movant received notice of this subpoena from counsel for eNom, who stated that they received service from Michael Peinovich by electronic mail on eNom to legal@enom.com. (Ex. C Declaration of Counsel ¶ 7).

Additionally, a subpoena served on a non-party witness must be served on all parties to action. *Callanan v. Riggers & Erectors*, 149 F.R.D. 519 (D.V.I. 1992). The movant is not aware of any proof of service filed with that court.  As of June 5, 2018, examination of the court docket in case *Sines et al v. Kessler et al* 3:17-cv-00072-NKM-JCH did not reveal and proof of service filed in relation to this subpoena.

Furthermore, the use of a post office box as the compliance location is a suspect practice because, among other reasons, it frustrates service of legal process, such as this motion to quash.

E.      THE SUBPOENA WAS NOT ISSUED IN GOOD FAITH.

The subpoena does not seek information that is relevant to the underlying litigation.  Rather, the Movant is informed and believes that Peinovich will seek to publish or disseminate private information obtained through the subpoena in an

MOTION TO QUASH SUBPOENA-6

attempt to harass and attack people associated with the targeted domains. The subpoenaing party is a blogger and founder of the podcast The Daily Shoah and alt-right media hub The Right Stuff, founded on a core principle of ethno-nationalism. (Ex. D The Guardian- Making Sense of the Alt Right p. 2). Movant believes that Peinovich seeks to publish private information of its users so that they may be exposed to a "troll storm."

Peinovich is publicly associated with co-defendant Richard Spencer; alleged in the complaint as the head of a white nationalist "think tank," the National Policy Institute, founder of the online publication called altright.com, and proponent of "ethnic cleansing."  The complaint alleges that on Friday, Aug 11, 2017, Spencer was a leader of a violent torchlight rally and headline speaker of the "Unite the Right" the right rally the following day. (Ex. B Complaint ¶ 22).  On August 12, violence broke out and became so severe that the police declared an unlawful assembly before the official start time of the rally.  Another co-defendant in the litigation, James Alex Fields, Jr., drove a Dodge Challenger into a crowd of protesters, injuring dozens and killing a 32-year old Heather Heyer. (Ex. B Complaint ¶ 24). Peinovich and Spencer have shared the stage on multiple occasions and Spencer is a frequent contributor to Peinovich's podcast, *The Daily Shoah*.

Andrew Anglin, founder and operator of the neo-Nazi website the Daily Stormer is also a co-defendant in this matter the case. The Daily Stormer has called its website the "world's most genocidal" website and is named after Der Stürmer, a

MOTION TO QUASH SUBPOENA-7

Nazi propaganda tabloid Anglin and his associates at Daily Stormer, including

Defendant Robert "Azzmador" Ray, use Daily Stormer's website "as a hardcore front

for the conversion of masses into a pro-white, Anti-semitic ideology," to "sell []

global white supremacy," and to "make a racist army."  The website was the most

visited hate site on the Internet in 2016.  (Ex. B Complaint ¶ 26).

The Daily Stormer orchestrates the activity of a so called "troll army", which

seeks to and does overwhelm adversaries with inflammatory and provocative online

conduct. These efforts often include doxing: de-anonymizing and publicizing

personal details of online users. Such doxing exposes targets to real world threats of

stalking, harassment, and physical danger. (Ex. E The Intercept- How Right Wing

Extremists Stalk, Dox, and Harass their Enemies). Anglin and other Daily Stormer

associates face numerous allegations in multiple lawsuits concerning doxing and

trolling. Following a dispute, between Richard Spencer's mother and local real estate

agent in their hometown of Whitefish, Mo., Anglin published the personal

information of the Realtor and other prominent Jewish leaders in town and called on

his "stormers" to come to the defense of the Spencers. (Ex. F NPR- Descending on a

Montana Town).

More recently, Anglin has been sued by American University's student body

president for allegedly directing the Daily Stormer's readers to troll storm her with a

barrage of racist and demeaning messages. (*Dumpson v. Ade et al.* 1:18-cv-01011

(D.D.C. 2018).  Last year, American University elected its first African American

MOTION TO QUASH SUBPOENA-8

student body president. Following the election, the Daily Stormer called on readers to "troll" the new president. The day after her inauguration, a masked man hung bananas from nooses on American University's campus, displaying racially-charged and threatening messages targeting Ms. Dumpson and her historically black sorority. Other lawsuits and claims against Anglin contain similar allegations.

Another co-defendant in the case, Christopher Cantwell, also conducts campaigns of online harassment, intimidation, and threats against political adversaries. A separate pending matter in the Western District of Virginia documents allegations about Cantwell's efforts to incite harassment campaigns against two anti-racist protesters who are cooperating witnesses for the prosecution in a pending criminal case against him for unlawful deployment of pepper spray at the torch rally on August 11. See *Cantwell v. Gorcenski, et al*, Case No. 3:17-cv-00089-NKM/JCH (W.D. Va., filed Dec. 28, 2017). The counterclaims in that case allege that Cantwell's online followers have published one witness' home address multiple times in an attempt to encourage physical violence against her. This conduct also allegedly included an attempt at "swatting" a witness. (Making a false police report, usually of an urgent or violent crime in progress, with the intention of luring law enforcement or SWAT to the victim's address in an effort to harass, intimidate, injure, or kill the targeted individual). *Cantwell* 3:17-cv-00089-NKM/JCH ¶ 36. Defendant Peinovich is publicly associated with Defendant Cantwell, and has

MOTION TO QUASH SUBPOENA-9

appeared as a guest on Cantwell's white nationalist podcast, "The Radical Agenda".

See "Radical Agenda Ep. 302—Mike Enoch," available at

https://archive.org/details/youtube-aSz_L1WZS7w (accessed June 6, 2018).

Movant believes that any information gathered by Peinovich through the

subpoena will be used to orchestrate similar campaigns to harass, intimidate, and

threaten Movant and individuals associated with the Movant. The subpoena is not a

legitimate effort to obtain relevant evidence. Rather, it is an effort to abuse the

discovery process to deanonymize an adversarial online news source and expose its

users to harassment, trolling, doxing, and other forms of intimidation. This online

targeting presents a clear and present danger of real world harmful threats.

F.      THE SUBPOENAING PARTY CANNOT OVERCOME THE MOVANT'S
        FIRST AMENDMENT RIGHT TO ANONYMOUS SPEECH.

In *Anonymous Online Speakers v. United States Dist. Court,* the Ninth Circuit

instructed on anonymous speech and the First Amendment in the context of online

activity:

> First Amendment protection for anonymous speech was first articulated a half-
> century ago in the context of political speech, *Talley v. California,* (1960),
> but… harkened back to "a respected tradition of anonymity in the advocacy of
> political causes." *McIntyre v. Ohio Elections Comm'n.* Undoubtedly the most
> famous pieces of anonymous American political advocacy are The Federalist
> Papers, penned by James Madison, Alexander Hamilton, and John Jay, but
> published under the pseudonym "Publius." Their opponents, the Anti-
> Federalists, also published anonymously, cloaking their real identities with
> pseudonyms such as "Brutus," "Centinel," and "The Federal Farmer." It is now
> settled that "an author's decision to remain anonymous, like other decisions
> concerning omissions or additions to the content of a publication, is an aspect
> of the freedom of speech protected by the First Amendment."

MOTION TO QUASH SUBPOENA-10

Although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech—there is "no basis for qualifying the level of First Amendment scrutiny that should be applied" to online speech. As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without "fear of economic or official retaliation . . . [or] concern about social ostracism." (Citations Omitted)

*(In re Anonymous Online Speakers),* 661 F.3d 1168, 1172-1173 (9th Cir. 2011). The Ninth Circuit considered that a higher standard should apply when a subpoena seeks the identity of an anonymous internet user who is not a party to the underlying litigation. 661 F.3d 1168, 1176, *citing, Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001) (noting that identification is only appropriate where the compelling need for discovery outweighs the First Amendment right of the speakers because litigation may continue without disclosure of the speakers' identities); *accord, Sedersten v. Taylor*, 2009 U.S. Dist. LEXIS 114525, 2009 WL 4802567 (W.D. Mo. Dec. 9, 2009); *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, (M.D. Pa. Dec. 11, 2008). In *Anonymous Online Speakers v. United States Dist. Court*, the Ninth Circuit ultimately went on to hold that it was not error for the district court to use the most exacting standard of *Doe v. Cahill*, 884 A.2d 451 (Del. 2005) ([subpoenaing party] must be able to survive a hypothetical motion for summary judgment and give, or attempt to give, notice to the speaker before discovering the anonymous speaker's identity). 661 F.3d 1168, 1179 (9th Cir. 2011).

MOTION TO QUASH SUBPOENA-11

This Court's opinion in *Doe v. 2TheMart.com, Inc.* (W.D. WA 2001) 140 F. Supp. 2d 1088, provides the clearest guide for protecting the First Amendment rights of non-party anonymous speakers. The Court established a four-part test:

1. The subpoena seeking the information was issued in good faith and not for an improper purpose;

2. The information sought relates to a core claim or defense;

3. The identifying information is directly and materially relevant to that claim or defense; and

4. Information sufficient to establish or disprove that claim or defense is unavailable from any other source.

*Supra,* 140 F. Supp. 2d, at 1091.

In the instant case, Defendant Peinovich seeks "communications, documents, and ESI sufficient to identify the persons, including entities, that have presently registered or ever in the past registered [domains of online political news service]. (Ex. A Subpoena, at 8). Standing alone, the subpoena utterly fails to show the information sought is likely to lead to any discoverable relevant evidence. Moreover, it proffers nothing to meet the First Amendment requirement for identifying anonymous speakers.  Arguendo, even if the subpoena somehow made a *prima facie* showing, deanonymizing domain registrants would not be the least restrictive means.

Finally, to the extent that the subpoena ultimately seeks the identities of

MOTION TO QUASH SUBPOENA-12

anonymous contributors of the movant's online news service, the movant also has a first amendment privilege to shield its sources. See, *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1468 (2006).

G.    THE STORED COMMUNICATIONS ACT PROHIBITS DISCLOSURE OF THE INFORMATION SOUGHT.

The Stored Communications Act prevents a private party from using a discovery subpoena to obtain the information sought here. 18 U.S.C. § § 2701-2711. The SCA, passed as part of the Electronic Communications Privacy Act of 1986, prohibits unauthorized access of electronic communications stored with online services. It also limits the ability of providers of communications and computing services to disclose communications and records regarding users of such services. Subsection 2702(a)(1) and (2), and subsection (a)(3) explicitly prevent, unless an appropriate exception applies, the disclosure to the government by an ECS or RCS provider of a customer "record" or "other information pertaining to" a subscriber or customer. Subsection 2702(a) enacts a blanket prohibition on disclosure — providers "shall not knowingly divulge to any person" the contents of communications or records or other information pertaining to a subscriber or customer — unless they meet the strict and specifically articulated exceptions.

At least one case has found that use of a discovery subpoena by a non-governmental entity was prohibited by the SCA.  In O'Grady v. Superior Court, 139 Cal.App.4th 1423 (Cal. App. 2006), a non-government litigant issued civil subpoenas

MOTION TO QUASH SUBPOENA-13

RALPH HURVITZ
ATTORNEY
P.O. BOX 25642
SEATTLE, WA 98165
206.223.1747

to an ECS operator seeking the identity and e-mail communications of an online

journalist who allegedly was in communication with a Doe defendant, the California

Court of Appeals found that discovery subpoenas could not be used to obtain the

material sought.

CONCLUSION

The subpoena at issue suffers from numerous defects and infirmities. It seeks

compliance outside of the limits set forth in Fed. Rule Civ. P. 45(c). Additionally,

service was defective. Moreover, the subpoena was not issued in good faith.  It is an

effort to abuse the discovery process to deanonymize an adversarial online news

source and expose its users to harassment, trolling, doxing, and other forms of

intimidation.  The subpoena seeks irrelevant information that is protected by the First

Amendment rights to anonymous speech and the privilege to shield sources. Finally,

the information sought is prohibited by the Stored Communication Act which

protects the subscriber information. Consequently, this Court must grant the motion

to quash the subpoena.

Dated this 7th day of June, 2018.

Respectfully submitted,

s/Ralph Hurvitz
RALPH HURVITZ
Attorney for Movant
WSBA 7365
P.O. Box 25642
Seattle WA 98165
Tel: 206.223.1747
Email: ralph@hurvitz.com

MOTION TO QUASH SUBPOENA-14

RALPH HURVITZ
ATTORNEY
P.O. BOX 25642
SEATTLE, WA 98165
206.223.1747